UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>DYLAN CORRAL,<br><br>  Defendant. | CASE NO. 3:22-cr-00048-JCC-TLF<br><br>FINDINGS AND RECOMMENDATION |

The District Court has referred, under Fed. R. Crim. P. 59, the hearing to determine whether defendant is presently competent, and whether he should be committed for competency restoration. Dkt. 139. The District Court reviews the Magistrate Judge's report and findings under a *de novo* standard of review if there are Constitutional issues to be resolved. *United States v. Raddatz,* 447 U.S. 667, 683 (1980); *U.S. v. Rivera-Guerrero,* 377 F.3d 1064, 1070-1071 (9th Cir. 2004).

The Court should hold that defendant is mentally incompetent; and the Court should find he is not presently able to "consult with [their] counsel with a reasonable

FINDINGS AND RECOMMENDATION - 1

degree of rational understanding and a rational, as well as factual understanding of the proceedings." *Dusky v. United States*, 362 U.S. 402, 402 (1960). The District Court should commit him to custody for a determination of restorability and proceedings pursuant to 18 U.S.C. § 4241.

## A. BACKGROUND

1. First Competency Hearing.

On September 21, 2022, the Honorable John C. Coughenour ordered a competency evaluation under 18 U.S.C. §§ 4241(b), 4247(b)–(c). Dkt. 17. The Court ordered a hearing, which was held on June 5, 2023 (after two hearings were scheduled in May, but required re-setting because of a scheduling conflict, and an illness). Dkt. 55, 56, 61, 65, 66. The defendant was found competent to stand trial at that time. Dkt. 75, 86.

Mr. Corral's filed two motions to remove his previous attorney; the first was denied, but after additional developments, the second motion was granted by the Court on August 29, 2023. Dkt. 69, 72, 75, 76, 77, 82, 85, 86, 87, 88, 89, 90, 92, 93, 95, 96, 97, 100, 102, 103, 107. Substitution of counsel was effectuated and his current attorney, Ms. Danica Mazenko, was appointed on September 8, 2023, under the CJA process. Dkt. 103, 107. Mr. Corral filed a third motion to substitute counsel on September 27, 2023. Dkt. 112, 112-1.

The Court held a hearing and recommended that no decision should be made on the third motion to substitute counsel until the defendant's competency to stand trial was again reviewed. Dkt. 122. The Findings and Recommendation was approved and adopted by the Hon. John C. Coughenour, and the Court referred the competency

hearing to the Magistrate Judge. Dkt. 139. In addition, after the defendant refused to be transported to the MDC in Los Angeles for evaluation, Judge Coughenour ordered that a new psychiatrist or clinical psychologist would be appointed, to evaluate Mr. Corral's mental health and to issue a report under 18 U.S.C. § 4241(a). Dkt. 149.

Defendant Dylan Corral stands charged under 18 U.S.C. § 876(c) with mailing interstate threats. Dkt. 1. After the Court ordered the first competency evaluation, Dr. Tiffany Smith, a forensic psychologist at the U.S. Bureau of Prisons' Metropolitan Detention Center in Los Angeles, reviewed Mr. Corral's records and considered other information such as phone calls that were being monitored by the Bureau of Prisons. Dkt. 33, Ext. A; Dkt. 27 (Report of Dr. Smith – admitted into evidence as Ex. B during the hearing); Dkt. 75 at 1-2.

Mr. Corral declined to participate in the competency evaluation with Dr. Smith; she relied on a review of records, and on other observations of him. Dkt. 27, at 1-2. Among the diagnoses that Dr. Smith gave for Mr. Corral was a diagnosis of antisocial personality disorder, and a provisional diagnosis of bipolar 1 disorder. Dkt 27, at 9-10; Dkt. 75 at 4.

At the close of the first competency hearing, both the prosecution and the defense argued that the defendant was, at that time, presently competent to stand trial. The Court made findings of fact, and found that in June of 2023, the defendant was competent to stand trial. *Id.* The Magistrate Judge issued Findings and Recommendations that Mr. Corral was competent at that time, and the District Court, after de novo review, agreed. Dkts. 75, 86.

1    Mr. Corral then made a motion to remove his attorney, and after a referral from
2    Judge Coughenour, the Court held a hearing on that motion and found that substitution
3    of counsel was warranted. Dkts. 103, 107. Then, two weeks later, Mr. Corral filed a
4    second motion to substitute counsel. Dkt. 112. The Court referred the motion to the
5    Magistrate Judge, and a status conference was held on October 10, 2023. Dkt. 121.

6    Counsel for the defense expressed during the hearing that she was concerned
7    about whether Mr. Corral could assist in his defense. The Court held an *in camera*
8    portion of the hearing, to protect attorney-client privilege, and filed Findings and
9    Recommendation that the Court should defer any decision on the defendant's motion to
10   substitute counsel. Dkt. 122. The Magistrate Judge also recommended that another
11   competency hearing should be conducted. Dkt. 122.

12   2. Second Competency Hearing.

13   Following de novo review by Judge Coughenour, the Court adopted the Findings
14   and Recommendation, and ordered an evaluation by a psychiatrist or clinical
15   psychologist, and ordered a second competency hearing should be held; the
16   competency hearing and related issues were then referred to the Magistrate Judge. Dkt.
17   139. Judge Coughenour subsequently modified his order and instructed the parties to
18   select a local psychologist, not associated with the BOP, to conduct the evaluation. Dkt.
19   149. The parties selected Dr. Charles Saldanha to conduct the evaluation of Mr. Corral.
20   Dkt. 154.

21   Mr. Corral's competency hearing was scheduled for April 1, 2024. At the outset of
22   the hearing, the Court was informed that Mr. Corral would not agree to be transported
23   from the Sacramento County Jail to the United States District Court in Sacramento for
24

the hearing. Dkt. 164, Transcript of Competency/Evidentiary Hearing, at 3:15-23. Mr. Corral was asked again in the afternoon to attend the hearing; Mr. Corral declined.

The Magistrate Judge issued a Findings and Recommendation that the Court should explore the issue of whether Mr. Corral has the ability to knowingly, voluntarily, and intentionally waive his right to be present at the competency hearing, and the issue of whether Mr. Corral has the ability to knowingly, voluntarily, and intentionally waive his right to testify at the competency hearing. The Magistrate Judge advised that this could be done by appointing a psychiatrist or clinical psychologist to evaluate Mr. Corral for this limited purpose, along with appointing a criminal defense attorney to consult with and advise Mr. Corral, and advise the Court, for this limited purpose. Dkt. 169. Judge Coughenour declined to adopt the Findings and Recommendation and ordered the United States Marshals Service and the Sacramento Jail deputies to remove Mr. Corral from his cell, using whatever means necessary if he refused to voluntarily be removed, and deliver Mr. Corral to the United States District Court for the Eastern District of California for a competency hearing before the Magistrate Judge. Dkt. 170.

The competency hearing took place on May 24, 2024, as discussed below. Dkt. 171.

**DISCUSSION**

A. **Legal Standards**

"At any time after the commencement of a prosecution for an offense and prior to the sentencing," a court may order a hearing to determine the mental competency of a defendant. 18 U.S.C. § 4241(a). Upon the parties' motion or *sua sponte* if there is reasonable cause to question the defendant's competency, the Court must hold such a

hearing.  18 U.S.C. § 4241(a).

The Court must determine "by a preponderance of the evidence" whether "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."   18 U.S.C. § 4241(d).

If the Court finds the defendant is not competent, the Court must "commit the defendant to the custody of the Attorney General" for hospitalization and treatment to restore competency.  18 U.S.C. § 4241(d).

A defendant is considered competent if they have:

- a rational and factual understanding concerning the nature and object of the proceedings;
- the ability to consult with their lawyer; and
- the ability to assist in preparation of their defense.

*Drope v. Missouri,* 420 U.S. 162, 171 (1975).

"[T]he criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma,* 517 U.S. 348, 354 (1996); *Medina v. California,* 505 U.S. 437, 453 (1992); *Drope v. Missouri,* 420 U.S. 162, 171-72 (1975). A defendant is competent to stand trial if he or she has " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as a factual understanding of the proceedings against him.' " *Godinez v. Moran,* 509 U.S. 389, 396 (1993); *Dusky v. United States,* 362 U.S. 402 (1960).

When a defendant requests substitution of appointed counsel and there are also

issues raised about whether the defendant is competent to stand trial, the court may consider whether the alleged mental disease or defect is connected to the difficulties with their attorney. *See United States v. Telles,* 18 F. 4th 290, 296-300 (9th Cir. 2021).

To make this determination, the Court considers the following factors, any one of which – standing alone – may in some circumstances be sufficient to prove incompetence to stand trial: evidence of the defendant's irrational behavior; defendant's demeanor in the courtroom; prior medical opinions concerning the defendant's competence to stand trial. *Drope,* at 180; *Miles v. Stainer,* 108 F.3d 1109, 1112 (9th Cir. 1997).

**B. Proposed findings of fact**

Dr. Saldanha received his medical degree from Duke University School of Medicine, completed his residency in general adult psychiatry from University of California, San Francisco, and conducted his fellowship in forensic psychiatry at Yale University School of Medicine. Dkt. 161 at 88. He currently acts as the Assistant Medical Director for the Forensic Psychiatric Associates. Along with his vast experience at various psychiatric hospitals and centers, he has also served as an expert witness in at least 10 cases in federal and state court. Dkt. 188 (Transcript) at 12:23-13:1. The Court found that Dr. Saldanha was qualified to serve as an expert witness during the hearing. Dkt. 188 at 14:4-10.

Dr. Saldanha met with Mr. Corral on February 22, 2024, as part of his evaluation for over three hours to conduct a psychiatric interview which included administration of the Evaluation of Competency to Stand Trial – Revised ("ECST-R"). Dkt. 161 (Report of Dr. Saldanha – admitted into evidence as Exhibit 2 during the hearing). He interviewed

Mr. Corral in a private visiting booth at the Sacramento County Jail. Dr. Saldanha concluded, based on materials reviewed[1] (*see* Appendix A) and his interview with Mr. Corral, that Mr. Corral presented with evidence of an acute episode of schizoaffective disorder, bipolar type. This, in Dr. Saldanha's opinion, renders Mr. Corral incompetent to the extent that he was unable to understand the nature and consequences of the proceedings against him and to assist properly in his defense. Though he had adequate factual knowledge of the proceedings, his ability to rationally consult with counsel and rationally understand the proceedings was severely impaired. Dkt. 161 at 2.

Mr. Corral informed Dr. Saldanha that he has been "under surveillance" since he was 19 years old. Dkt. 161 at 4. Mr. Corral stated that, with his being paranoid while on methamphetamine, people in his town started to follow him around to "trick [him] out." *Id.* at 5. He thought his mother hired a private investigator to follow him and because of this surveillance, rumors started to spread that Mr. Corral was gay and a monster. *Id.* He stated that somehow people thought his wanting to hurt or kill others related to being perceived as gay, and this was relayed to the county. *Id.* Mr. Corral stated that he was then placed under surveillance in prison. *Id.*

Mr. Corral discussed with Dr. Saldanha the abuse and mistreatment he experienced while in custody. While in prison, Mr. Corral told Dr. Saldanha that the prison not only administered poison and drugged his food but also started administering medicine through his vent to help with focus and also pumped in "sexual gasses" to

---

[1] Dr. Saldanha testified during the hearing that he reviewed Mr. Corral's mental health records from the period of his incarceration at the Metropolitan Detention Center-Los Angeles and Mr. Corral's motion to dismiss filed on May 14, 2024 (admitted into evidence as Exhibit 1 during the hearing), subsequent to issuing his evaluation report. Dkt. 188 at 17:20-19:7. He stated that neither the mental health records nor Mr. Corral's recent filing changed his opinions and conclusions. *Id.*

FINDINGS AND RECOMMENDATION - 8

make him gay. *Id.* Mr. Corral thought that the prison hired a neurologist to pump gasses into his cell to help him; while he thought the gasses helped with his racing thoughts, the gasses also poisoned him. *Id.* Mr. Corral never met this neurologist. *Id.* He stated that his brain was damaged by psychosurgery with chemicals, which resulted in him being very short fused. *Id.* at 6. Mr. Corral thought that the prison was using a "thought apparatus" to listen to his thoughts, which were then shared with inmates, officers, and foreign countries. *Id.* at 8.

Mr. Corral further told Dr. Saldanha that the government gave him mind erasers to get murder off his mind because the government thought he was going to kill someone. *Id.* When Dr. Saldanha asked Mr. Corral if he heard voices, Mr. Corral stated that he did not hear voices; rather he knew people were talking and can constantly hear the voices. *Id.* Based on this part of the evaluation, Dr. Saldanha opined that Mr. Corral's thought content was notable for delusions of a paranoid and grandiose nature. *Id.* at 11.

Mr. Corral informed Dr. Saldanha that he had "weird and bad thoughts," but he was reluctant to go into specifics of exactly what those thoughts were during the evaluation. *Id.* at 7. Mr. Corral likened the "bad" thoughts to a scene in a film, "Happy Gilmore" in which the main character has a vision of his grandmother kissing someone. *Id.* Mr. Corral was concerned that if he shared details of his thoughts, it would be used as evidence of a mental disorder. *Id.* Mr. Corral believed if he did have a mental disorder, it is "thought-based, but not schizo-based." *Id.*

With respect to his relationship with his current defense attorney, Mr. Corral told Dr. Saldanha that he sought to fire his attorney because she has not taken the following steps to demonstrate the conspiracy against him:

1. Obtaining MRI and PET scans of his brain to show where and how his brain was damaged.
2. Hiring a neurology expert to testify about his brain damage and what could have caused it.
3. Acquiring the vent from his prison cell to swab it.
4. Obtaining recordings of phone conversations of other inmates that likely have discussion of what they were told about what was being done to him.
5. Obtaining video recordings of people in the conspiracy going into the attic of the prison with tanks of gas.
6. Obtaining audio recordings of people in the conspiracy telling other inmates about what they were doing.
7. Hiring private investigators to interview witnesses including inmates who had been told about what was being done to him and his family who knew about the mind erasers.
8. Getting transaction receipts that would show where "they could have bought a thought apparatus" and for 5,000 earpieces for people to listen to his thought.

*Id.* at 13-14.

Mr. Corral voiced paranoid delusional beliefs regarding Judge Coughenour during his interview with Dr. Saldanha. He thought that Judge Coughenour could be involved in a conspiracy and "prevaricating." *Id.* at 14. Specifically, he stated it was not

1  crazy to believe there would be conspiracies involving a judge in his situation because
2  he (Mr. Corral) was about to start the biggest riots in American history and that people
3  would try to overthrow the government. *Id.*

4  Relatedly, at the outset of the hearing, Mr. Corral wanted to bring to the
5  Magistrate Judge's attention his recently filed motion to dismiss, which was filed *pro se.*
6  Dkt. 188 at 5:22-6:6; *see also* Dkt. 188 (motion to dismiss). One of the attachments
7  included in his motion to dismiss was a "motion for recusal" directed at Judge
8  Coughenour. Dkt. 181-2 at 136-183. Mr. Corral stated in the motion, that Judge
9  Coughenour has displayed "deep-seated favoritism or antagonism that would make fair
10 judgment impossible" (citing *Liteky v. United States*, 510 U.S. 540, 554-56 (1994)). *Id.* at
11 166. Another attachment to the motion to dismiss was a writ of mandamus in which Mr.
12 Corral requests the Ninth Circuit to direct both Judge Coughenour and this Magistrate
13 Judge to recuse from the case. Dkt. 181-2, at 136-183; *see also* Dkt. 188 at 5:22-6:6.
14 The writ of mandamus has not been filed with the Ninth Circuit.

15 The Magistrate Judge informed Mr. Corral that the purpose of the instant hearing
16 was to evaluate his competency, and his motion to dismiss will be addressed by Judge
17 Coughenour on a later date[2]. Dkt. 188 at 8:7-11. The Court reviewed Mr. Corral's

---

[2] Mr. Corral's motion to dismiss and the exhibits concerning requests for recusal have not been referred to the Magistrate Judge. The mandamus action was submitted as an exhibit to a motion to dismiss filed in this Court – yet it was directed to the U.S. Court of Appeals for the Ninth Circuit. The Magistrate Judge's impartiality is questioned in the exhibit that contains the mandamus action. Mr. Corral is relying on a federal statute concerning recusal. "Federal judges are required by statute to recuse themselves from any proceeding in which their impartiality might reasonably be questioned." *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 714 (9th Cir. 1990); *see* 28 U.S.C. § 455(a) "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned"); *see also* 28 U.S.C. § 144 ("[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein..."). Mr. Corral did not file a sufficient affidavit in this Court, and the recusal request was submitted by Mr. Corral and not his lawyer, directed to the Ninth Circuit rather than

FINDINGS AND RECOMMENDATION - 11

motion to dismiss and the attachments for the purposes of evaluating his competency and these hand-written documents are consistent with Dr. Saldanha's findings – that Mr. Corral, as a result of paranoia and grandiose delusions, believes that many individuals, including the Judge, are part of a conspiracy against him.

With respect to his factual understanding of courtroom proceedings, Dr. Saldanha reports that Mr. Corral offered an accurate description of the roles of the judge, defense counsel, district attorney, and a jury. Dkt. 161 at 14. Mr. Corral was accurately able to identify the charges he has facing, define them, and the penalties associated with them. *Id.* Dr. Saldanha reported that during the interview, Mr. Corral was often pressured and long-winded in his speech and was at times tangential in his responses. *Id.* He opined that overall, including from his observations of Mr. Corral during the hearing, Mr. Corral showed no other behaviors incompatible with appropriate courtroom comportment. *Id.*; *see also* Dkt. 188 at 49:14-15:1.

Dr. Saldanha concluded that Mr. Corral met the criteria for the following diagnoses: (1) Schizoaffective Disorder, Bipolar Type, Multiple Episodes, Currently in an Acute Episode; (2) Antisocial Personality Disorder; (3) Cannabis Use Disorder, Moderate, in Sustained Remission, in a Controlled Environment; (4) Amphetamine Type Substance Use Disorder, Moderate, in Sustained Remission, in a Controlled Environment; (5) Opioid Use Disorder, Mild, In Sustained Remission, in a Controlled Environment; and (6) Cannabis Use Disorder, Moderate, In Sustained Remission, in a Controlled Environment. Dkt. 161 at 15.

---

intended for this Court. The documents have been considered in the Findings and Conclusions only with respect to Mr. Corral's present competency to stand trial.

With respect to Mr. Corral's competency to stand trial, Dr. Saldanha pointed out that Mr. Corral's paranoid delusions, pressured speech, disorganized thought process, and his inability to consult with his lawyer with a reasonable degree of rational understanding, caused Dr Saldanha to conclude that Mr. Corral was suffering from a mental disease or defect at the time of the evaluation that rendered him unable to understand the nature and consequences of the proceedings against him and assist properly in his defense. Dkt. 161 at 21.

Mr. Corral chose not to testify at the competency hearing. Dkt. 188 at 53:9-15. At the close of the hearing, both the prosecution and the defense argued that the defendant is not presently competent to stand trial. Dkt. 188 at 54-56.

**C. Proposed determination of competency**

The Court should hold that, although Defendant Dylan Corral has adequate factual knowledge of the proceedings, by a preponderance of the evidence the record shows he does not currently demonstrate: (1) a rational understanding concerning the nature and object of the proceedings, (2) the ability to consult with his lawyer, or (3) the ability to assist in preparation of their defense. *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Other Federal Courts, including the Ninth Circuit, have found that there was bona fide doubt regarding a defendant's competence in cases where defense counsel has proffered evidence that the defendant would no longer be able to assist rationally in his defense because he believed his attorney was part of a greater conspiracy against him. *See, e.g., Torres v. Prunty*, 223 F.3d 1103, 1109 (9th Cir. 2000) (explaining that defendant's counsel was in the best position to evaluate defendant's competence and

ability to render assistance in case whether defendant believed counsel and judge were part of conspiracy, and while her recommendation to the judge, while not necessarily sufficient to create a bona fide doubt, should have been considered seriously by the court); *Deere v. Woodford*, 339 F.3d 1084, 1085 (9th Cir. 2003), *as amended on denial of reh'g* (Oct. 2, 2003) (holding that a competency hearing should have been held in case where psychiatrist's declaration stated that while plaintiff understood the nature of the criminal proceedings, his mental disorders rendered him unable to assist counsel in the conduct of a defense in a rational manner.); *United States v. Nagy,* No. 96-CR601, 1998 WL 341940, at *7 (S.D.N.Y. June 26, 1998) (defendant's paranoid delusions of conspiracy against him rendered him unable to assist in his defense despite factual understanding of role of lawyers and judge in courtroom), *aff'd* 173 F.3d 847, 1999 WL 245869 (2d Cir.), *cert. denied,* 528 U.S. 840 (1999); *United States v. Ghane*, 490 F.3d 1036, 1040 (8th Cir. 2007) (finding that the district court did not err by relying on doctors' opinions that defendant had a factual understanding of the charges against him, but his understanding was not rational because he believed the charges were part of a wide ranging government conspiracy).

    By a preponderance of the evidence, Mr. Corral is presently suffering from a mental disease or defect that would render him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. 18 U.S.C. §§ 4241.

**CONCLUSION**

Based on the above analysis and reasoning, the Court should order the defendant to be committed to the custody of the Attorney General for restoration of his mental competency. 18 U.S.C. § 4241(d).

Pursuant to 28 U.S.C. § 636(b)(1), (b)(3) and Fed. R. Crim. P. 59, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* United States District Court for the Eastern District of California Local Rule of Criminal Procedure 430.1(j).

The Magistrate Judge's Findings and Recommendation will be reviewed *de novo. U.S. v. Rivera-Guerrero,* 377 F.3d 1064 (9th Cir. 2004).

Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Objections are due within 14 days after service of these Findings and Recommendation.

Dated this 3rd day of June 2024.

Theresa L. Fricke
United States Magistrate Judge