1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA AT SACRAMENTO

9

10 UNITED STATES OF AMERICA,

11                Plaintiff,

12     v.

13 DYLAN CORRAL,

14                Defendant.

15

CASE NO. 2:22-cr-00048-JCC-TLF

FINDINGS AND
RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT
PURSUANT TO FED. R. CRIM. P. 59
AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247

16      The District Court has referred, under Fed. R. Crim. P. 59, the hearing to

17 determine whether defendant is presently competent. Dkt. 213. The District Court

18 reviews the Magistrate Judge's report and findings under a *de novo* standard of review

19 if there are Constitutional issues to be resolved. *United States v. Raddatz,* 447 U.S.

20 667, 683 (1980); *U.S. v. Rivera-Guerrero,* 377 F.3d 1064, 1070-1071 (9th Cir. 2004).

21      The Court should hold that, reviewing the expert evidence and other information

22 presented during the hearing, by a preponderance of evidence defendant is presently

23 mentally incompetent to stand trial; and the Court should find that because of symptoms

24

due to mental disease, schizoaffective disorder, bipolar type, he does not have "sufficient present ability to consult with [their] counsel with a reasonable degree of rational understanding – and whether [they have] a rational, as well as factual understanding of the proceedings." *Dusky v. United States*, 362 U.S. 402, 402 (1960). The District Court should find there is a substantial probability that the defendant will become competent in the foreseeable future and recommit him to custody for a determination of restorability and proceedings pursuant to 18 U.S.C. § 4241.

In the alternative, if the District Judge finds the defendant has not been restored to competency and there is *not* a substantial probability that the defendant will become competent in the foreseeable future, the Court should follow the procedures to consider the issue of whether the defendant should be indefinitely committed under 18 U.S.C. § 4246.

## BACKGROUND

### A. Competency Hearing

On August 19, 2024, the Honorable John C. Coughenour adopted Magistrate Judge Theresa L. Fricke's Findings and Recommendation and found by a preponderance of the evidence that Mr. Corral was not competent to assist in his defense. *See* Dkt. 203. Judge Coughenour ordered Mr. Corral to be committed to the custody of the Attorney General and the Attorney General should hospitalize Mr. Corral for treatment in a suitable facility to determine whether there was a substantial probability that in the foreseeable future, defendant would attain the capacity to permit his criminal proceeding to go forward, and if appropriate, to undergo competency

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 2

1    restoration treatment. *Id.*

2         Mr. Corral was transported from the Bureau of Prisons ("BOP") and admitted to

3    Federal Medical Center ("FMC") Devens in Massachusetts on December 12, 2024. Dkt.

4    211 (sealed). On April 4, 2024, FMC Devens Warden F.J. Bowers submitted a

5    certificate of competency as to Mr. Corral. Dkt. 212 (sealed). Upon receipt of the

6    certificate, the Hon. John Coughenour referred the matter to the Magistrate Judge. Dkt.

7    213.

8         The competency hearing took place on June 10, 2025. Dkt. 231. As discussed

9    further below, the Court's review of the issues at the hearing on June 10, 2025 was

10   focused on whether Mr. Corral is presently competent to stand trial, and if Mr. Corral is

11   not competent, to then identify and make recommendations about the next steps.

**DISCUSSION**

12

13   **A. Legal Standards**

14        "At any time after the commencement of a prosecution for an offense and prior to

15   the sentencing," a court may order a hearing to determine the mental competency of a

16   defendant. 18 U.S.C. § 4241(a). Upon the parties' motion or *sua sponte* if there is

17   reasonable cause to question the defendant's competency, the Court must hold such a

18   hearing. 18 U.S.C. § 4241(a).

19        The Court must determine "by a preponderance of the evidence" whether "the

20   defendant is presently suffering from a mental disease or defect rendering him mentally

21   incompetent to the extent that he is unable to understand the nature and consequences

22   of the proceedings against him or to assist properly in his defense." 18 U.S.C. §

23   4241(d).

24
     FINDINGS AND RECOMMENDATION ON WITH
     PROPOSED FINDINGS OF FACT PURSUANT TO
     FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
     4247 - 3

1    If the Court finds the defendant is not competent, the Court must "commit the

2    defendant to the custody of the Attorney General" for hospitalization and treatment to

3    restore competency. 18 U.S.C. § 4241(d).

4    A defendant is considered competent if they have:

5    • a rational and factual understanding concerning the nature and object of the

6    proceedings;

7    • the ability to consult with their lawyer; and

8    • the ability to assist in preparation of their defense.

9    *Drope v. Missouri,* 420 U.S. 162, 171 (1975).

10    "[T]he criminal trial of an incompetent defendant violates due process." *Cooper v.*

11    *Oklahoma,* 517 U.S. 348, 354 (1996); *Medina v. California,* 505 U.S. 437, 453 (1992);

12    *Drope v. Missouri,* 420 U.S. 162, 171-72 (1975). A defendant is competent to stand trial

13    if they have " 'sufficient present ability to consult with [their] lawyer with a reasonable

14    degree of rational understanding' and has 'a rational as well as a factual understanding

15    of the proceedings against [them].'" *Godinez v. Moran,* 509 U.S. 389, 396 (1993); *Dusky*

16    *v. United States,* 362 U.S. 402 (1960).

17    To make this determination, the Court considers the following factors, any one of

18    which – standing alone – may in some circumstances be sufficient to prove

19    incompetence to stand trial: evidence of the defendant's irrational behavior; defendant's

20    demeanor in the courtroom; prior medical opinions concerning the defendant's

21    competence to stand trial. *Drope,* at 180; *Miles v. Stainer,* 108 F.3d 1109, 1112 (9th Cir.

22    1997).

23

24

1    Under 18 U.S.C. § 4241(d)(1), after being found incompetent to stand trial the

2   defendant may be hospitalized for a reasonable time, not to exceed four months. If the

3   director of the facility believes the defendant has become competent after being

4   committed for the competency restoration, they will inform the Court and a competency

5   hearing is set. If the Court finds by a preponderance of the evidence the defendant has

6   been restored to competency, a trial date will be set. *United States v. Quintero,* 995

7   F.3d 1044, 1054-1056, 1059-1060 (9th Cir. 2021).

8    If the Court finds the defendant has not been restored to competency after this

9   period of commitment for competency restoration, there are three options. First, under

10  18 U.S.C. § 4241(d)(2)(A), if there is a substantial probability that the defendant will

11  become competent in the foreseeable future, then continued commitment is allowed,

12  but only if the Court finds "there is a substantial probability that within such additional

13  period of time [the defendant] will attain the capacity to permit the proceedings to go

14  forward." *U.S. v. Loughner,* 672 F.3d 731, 766-772 (9th Cir. 2012); *see also, United*

15  *States v. Ceasar,* 30 F.4th 497, 501-502 (5th Cir. 2022) (warden's certification of

16  competency does not undermine the Court's authority to order additional commitment

17  period).

18    Second, if the Court finds there is a substantial probability that Mr. Corral will

19  "attain the capacity to permit the proceedings to go forward" the Court may order

20  involuntary medication to enable the defendant to become competent for trial if four

21  criteria are met. *U.S. v. Brooks,* 750 F.3d 1090, 1093, 1097 (9th Cir. 2014). This is

22  disfavored and such hearings adjudicate whether the defendant should be involuntarily

23  medicated – not whether they should have another period of commitment for restoration

24
FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 5

1    of competency. *Sell v. United States,* 539 U.S. 166, 179 (2003); *U.S. v. Rivera-*

2    *Guerrero,* 426 F. 3d 1130, 1137 (9th Cir. 2005). Neither party proposed this option, and

3    it does not appear to be a viable option at this juncture.

4      Third, if the Court finds there is *not* "a substantial probability that within such

5    additional period of time [the defendant] will attain the capacity to permit the

6    proceedings to go forward" the Court may order a hearing to determine whether the

7    defendant suffers from a mental disease or defect and that upon release the mental

8    disease or defect would "create a substantial risk of bodily injury to another person or

9    serious damage to property of another". 18 U.S.C. § 4246(a); *U.S. v. Godinez-Ortiz,* 563

10   F.3d 1022, 1029-1032 (9th Cir. 2009); *U.S. v. Rivera-Morales,* 365 F. Supp.2d 1139,

11   1141-1146 (S.D. Cal. 2005). If a hearing is ordered on the issue of whether the

12   defendant should be indefinitely committed under Section 4246, the defendant must

13   receive notice under Sections 4246, 4247, as to the civil commitment hearing, and the

14   defendant must receive notice of the government's proof regarding potential for future

15   dangerousness. *U.S. v. Loughner,* 672 F.3d 731, 751-752 (9th Cir. 2012); *U.S. v. Baker,*

16   807 F.3d 1315, 1323-1325 (6th Cir. 1986). The standard for this type of commitment is

17   whether the defendant "has a serious mental illness . . . is dangerous to himself or

18   others and the treatment is in the inmate's medical interest." *Loughner,* 672 F.3d at 752,

19   *quoting, Washington v. Harper,* 494 U.S. 210, 227 (1990).

20

21

22

23

24

**B. Proposed findings of fact**

At the hearing, the Government presented two witnesses to testify: Dr. Chad Brinkley and Dr. Diana Hamilton.

    1. <u>Dr. Chad Brinkley</u>

Dr. Brinkley received his Master's Degree and Doctor of Philosophy in Clinical Psychology from University of Wisconsin. Dkt. 229 (Curriculum Vitae of Dr. Brinkley – admitted into evidence as Exhibit 3 at the hearing). He acted as a licensed psychologist in Indiana, Texas, and Pennsylvania, and is board certified in forensic psychology by the American Board of Professional Psychology. *Id.*

Dr. Brinkley was employed with the BOP since 2001 working at the Mendota Mental Health Institute, Atlanta City Detention Center, United States Penitentiary in Atlanta, Georgia, the Federal Detention Centers in Houston, Texas, and Philadelphia, Pennsylvania, United States Medical Center for Federal Prisoners in Springfield, Missouri, and Central Office Psychology Services Branch in Fort Dix, New Jersey. *Id.* Dr. Brinkley retired from federal service on March 31, 2025. Dkt. 212 (Dr. Brinkley's Report (sealed) – admitted into evidence as Exhibit 2 at the hearing) at 1; Dkt. 234 (Transcript) at 4:14-15. His most recent employment before retiring was for the Central Office Psychology Services Branch where he worked as a traveling forensic evaluator. *Id.* at 4:18-24 He was stationed at FMC Devens approximately two weeks out of the month to assist with forensic evaluations. *Id.*

Along with his experience at these psychiatric hospitals and centers, he has also recently served as an expert witness in at least three federal court cases. *Id.* at 8:21-

1    9:7. The Court found that Dr. Brinkley was qualified to serve as an expert witness during

2    the hearing. *Id.* at 10:24-11:6.

3         The competency restoration team at FMC Devens consisted of several

4    professionals. Dkt. 212 (sealed) (Report of Dr. Brinkley) at 7. As part of the evaluation

5    process, Dr. Brinkley reviewed several documents on the case docket. *Id.* at 4-7. In

6    drafting the Relevant Background Information section of the competency report, which

7    included the history of Mr. Corral's developments/relationships, education, employment,

8    physical health, mental health, substance abuse, and legal history, Dr. Brinkley relied, in

9    part, on information obtained from past records and reports, including the competency

10   evaluation completed by Dr. Charles Saldanha dated March 21, 2024. *Id.* at 8-21.

11        Upon being admitted to FMC Devens on December 12, 2024, Mr. Corral met with

12   a psychologist in a private office to conduct a brief admission evaluation. *Id.* at 21.

13   According to the corresponding clinical note entered in Mr. Corral's mental health

14   record, Mr. Corral presented as calm and cooperative during the initial admission

15   evaluation. He described his mental health history as having "non-specific homicidal

16   ideations." Because he reported experiencing "non-specific homicidal ideations," Mr.

17   Corral was first housed in the Secured Mental Health Unit ("SMHU"). Dkt. 212 (sealed)

18   at 22.

19        On December 17, 2024, Dr. Brinkley and Dr. Hamilton met with Mr. Corral, as

20   part of his evaluation in a private area in the SMHU. *Id.* at 22-23. During the interview,

21   Mr. Corral presented as calm and coherent, and he did not discuss any "unusual ideas."

22   *Id.* He denied having any current, specific plans or intentions to harm anyone. *Id.* Mr.

23   Corral stated he understood he was sent for a 120-day competency restoration study

24   FINDINGS AND RECOMMENDATION ON WITH
     PROPOSED FINDINGS OF FACT PURSUANT TO
     FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
     4247 - 8

1  and agreed to participate in the competency restoration procedures, but he indicated a

2  preference to not take psychiatric medication. *Id.*

3        Dr. Brinkley and Dr. Hamilton discussed the possibility of moving Mr. Corral to a

4  semi-secure mental health unit. Mr. Corral indicated he thought he could safely function

5  in this semi-secure mental health unit; he was moved to the semi-secured unit on

6  December 20, 2024. *Id.*

7        On December 23, 2024, during a conversation with a psychologist, Mr. Corral

8  requested to be moved to the open unit. *Id.* During his conversation with the

9  psychologist, Mr. Corral became agitated and made vague threats about riots in the

10  community and law enforcement not being safe. *Id.* Mr. Corral was subsequently moved

11  to the secured unit because he exhibited "emotional and behavioral dysregulation." *Id.*

12  at 24. After being returned to the SMHU, he informed staff he was suicidal – he was

13  then seen by a psychologist for a suicide risk assessment. During this assessment, Mr.

14  Corral acted belligerently, yelling profanities and made threats against the psychologist.

15  *Id.*

16        Dr. Dean Cutillar, a psychiatrist, met with Mr. Corral on December 23, 2024. Dkt.

17  212 (sealed) at 24. Mr. Corral talked about his delusional thoughts of the "FBI, state

18  prison staff" wanting to poison him and "falsifying documents." *Id.* Mr. Corral refused

19  oral medication to help decease his psychotic symptoms. Dr. Cutillar ordered an

20  emergency involuntary intramuscular medication to "instill calm and decrease psychotic

21  symptoms." *Id.*

22        Mr. Corral was placed on suicide watch from December 23, 2024 to December

23  27, 2024, and was evaluated every day. *Id.* at 25. During these evaluations, psychology

24

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 9

1  staff noted he was extremely irritable, expressed paranoia about poison being pumped

2  into his cell and exhibited aggressive behavior against staff. Dkt. 212 (sealed) at 25-26.

3       Mr. Corral refused to take oral anti-psychotic medication. *Id.* at 27. Thus, a due

4  process hearing was conducted on January 8, 2025, to determine if ongoing treatment

5  with involuntary psychiatric medication was required to prevent Mr. Corral from being a

6  danger to himself and others. *Id.* Mr. Corral was cooperative with hearing procedures.

7  *Id.* at 36. The hearing officer determined ongoing treatment was justified. *Id.* at 27. Mr.

8  Corral appealed this decision. *Id.* The Chief Psychiatrist agreed with the hearing

9  officer's decision. *Id.* Mr. Corral received his first dose of medication on January 14,

10  2025. *Id.* at 28.

11       During the June 10, 2025, competency hearing, Dr. Brinkley testified that

12  antipsychotic medication, when taken consistently at a therapeutic dose, will improve

13  symptoms for most individuals with psychotic disorders. Dkt. 234 at 22:8-17. He testified

14  that some studies have shown that it can take up to 180 days to see the full benefits of

15  the medication, particularly for a symptom like delusions. *Id.* at 22:24-23:1. Mr. Corral

16  was prescribed a medication in an injectable format that was intended to manage both

17  his psychotic and mood symptoms. *Id.* at 23:18-24:4.

18       Dr. Hamilton met with Mr. Corral on January 16, 2025. *Id.* at 28. Mr. Corral stated

19  he wanted to be moved to the open mental health unit. *Id.* Dr. Hamilton reviewed a note

20  from a nurse where she quotes Mr. Corral stating, "I am going to get out and shoot 30

21  kids at a school and the FBI will get all you guys," on January 15, 2025. *Id.* Mr. Corral

22  stated this was a misunderstanding. *Id.* When Dr. Hamilton informed Mr. Corral she

23  needed to see a longer period of time without miscommunication before discharging Mr.

24

1    Corral from SMHU, Dr. Hamilton noted he received the information "mostly maturely."

2    Dkt. 234 at 28.

3         On January 17, 2025, Mr. Corral was placed on suicide watch after reporting he

4    was suicidal and remained on suicide watch until January 21, 2025. *Id.* During this

5    period, Mr. Corral made comments suggesting he was experiencing paranoia. For

6    example, he told psychology staff that he was collecting data for his "manifesto," which

7    will "lead to riots and a revolution." *Id.* at 30. The psychology staff hoped that Mr. Corral

8    would soon benefit from the prescribed medication. *Id.*

9         On January 28, 2025, Mr. Corral met with the competency restoration team and

10   expressed wanting the competency restoration study to be completed sooner so he can

11   return to California. *Id.* He acknowledged making homicidal threats and said being in a

12   locked unit aggravates his anger. *Id.* Mr. Corral indicated he understood the importance

13   of taking his medication. *Id.*

14        On January 29, 2025, Dr. Brinkley met with Mr. Corral in a private space to

15   conduct a forensic interview. *Id.* At the time of the interview, he expressed a desire to

16   move to an open unit, and Dr. Brinkley explained what Mr. Corral could do to show staff

17   he was able to safely transition to an open unit. *Id.* at 32. Mr. Corral also stated he

18   wanted to make a legal call to speak with his attorney. *Id.* Dr. Brinkley and Mr. Corral

19   discussed how Mr. Corral might be able to resolve disagreements about legal strategy

20   with his attorney. Dkt. 234 at 26:22-28:4.

21        Dr. Hamilton met with Mr. Corral on February 10, 2025. *Id.* At this time, Mr.

22   Corral had been transferred to the open unit. Mr. Corral informed Dr. Hamilton he had a

23   conversation with his attorney and felt "she had heard him and he heard her." *Id.*

24

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 11

On February 14, 2025, Dr. Brinkley completed a 15-minute phone interview with Mr. Corral's attorney, Ms. Danica Mazenko, to discuss her views about Mr. Corral's ability to cooperate with her to prepare a defense. *Id.* at 28. Ms. Mazenko informed Dr. Brinkley that she noticed a difference after he began treatment, and Mr. Corral's conversation with her showed he was willing to listen to her regarding legal strategy. She expressed that she believed Mr. Corral had improved to the point where she would be able to work with him. Dkt. 234 at 28:21-23.

Ms. Mazenko contacted Dr. Brinkley by email on February 16, 2025, and reported Mr. Corral had "reverted to his delusions." *Id.* at 29. She expressed concerns that his delusional beliefs were interfering with his ability to make rational decisions about his legal case. *Id.* at 29, 39.

On the same day, Mr. Corral wrote a letter directed at Deputy United States Marshal Howes asking him to investigate the California Health Care Facility. Dkt. 225 at 4 (Letter – admitted into evidence as Exhibit 1 at the hearing). He claimed he was poisoned with "jerk-off gas" and "chlorine gas" and that there is a "mass conspiracy" in the Eastern District. Dr. Brinkley testified he did not review this letter because it was not filed with the Court until after he completed his evaluation. Dkt. 234 at 38:23-39:5.

On February 25, 2025, Dr. Brinkley met with Mr. Corral in a private space. *Id.* at 32. Mr. Corral informed Dr. Brinkley he had a conversation with his attorney. *Id.* at 33. Mr. Corral expressed disappointment that his counsel would not "pursue evidence that he was subjected to toxic gasses and multiple correctional facilities." *Id.* He thought his attorney was being unreasonable and talked about firing his attorney. *Id.*

1      On February 27, 2025, Mr. Corral reported the injections of Haldol he was

2 receiving were resulting in side effects. *Id.* at 33. He said the medication caused him to

3 stutter, tremble, and have a dry mouth. *Id.* Mr. Corral thought the medication was poison

4 and would not prevent him from hurting someone. *Id.* He thought the courts were

5 conspiring against him. *Id.* The psychiatrist offered to change his medication from an

6 injection to oral tablets; Mr. Corral agreed. *Id.* at 34.

7      Dr. Brinkley was notified of the contents of a monitored phone call Mr. Corral

8 made to his family on March 4, 2025, during which he stated the "Government is

9 responsible for his brain damage" and he threatened to hurt others. *Id.* Mr. Corral was

10 consequently moved to the more restrictive SMHU. *Id.*

11      On March 4, 2025, Dr. Brinkley conducted another interview with Mr. Corral's

12 attorney. *Id.* at 39. Mr. Corral's attorney stated she last spoke to Mr. Corral on March 2,

13 2025, and thought Mr. Corral was trying to work with her in a productive way. *Id.* While

14 she thought he reached a point where they could work together, she expressed concern

15 about the possibility of Mr. Corral's ability to maintain his current stability over time,

16 particularly if he was transferred out of FMC Devens and stopped taking his psychiatric

17 medication as prescribed. *Id.*

18      On March 5, 2025, Dr. Brinkley conducted a final interview with Mr. Corral in a

19 private room. *Id.* at 35. During the interview, he coherently answered questions about

20 his ability to work with his attorney. *Id.* Mr. Corral stated he was willing to work with his

21 attorney and he trusted her. Dkt. 234 at 29:25-30:6. Dr. Brinkley testified that Mr. Corral

22 understood that evidence that was not directly relevant to his defense against the

23 current charge would not be admitted into evidence. *Id.* at 30:7-14.

24

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 13

Dr. Brinkley concluded that Mr. Corral met the criteria for the following diagnoses: (1) Schizoaffective Disorder, Bipolar Type, Multiple Episodes, Currently in an Acute Episode; (2) Antisocial Personality Disorder; (3) Cannabis Use Disorder, Moderate, in Sustained Remission, in a Controlled Environment; (4) Amphetamine Type Substance Use Disorder, Moderate, in Sustained Remission, in a Controlled Environment; and (5) Opioid Use Disorder, Mild, In Sustained Remission, in a Controlled Environment. Dkt. 212 (sealed) at 39-45.

He testified during the hearing that Mr. Corral's diagnosis of Schizoaffective Disorder, Bipolar Type primarily affected his competency-related abilities. Dkt. 234 at 13:10-14. He further testified the medication Mr. Corral was prescribed did improve his symptoms over time; he continued to show signs of unusual thinking and delusional beliefs, but those beliefs seemed to have less influence over Mr. Corral's day-to-day actions and his consideration of legal strategy and ability to work with his attorney. *Id.* at 24:5-14, 30:15-19. Mr. Corral continued to make comments about being exposed to "jerk-off gas" that was altering his sexuality or making him more promiscuous, "mind erasers" influencing his thinking, and a belief that "many agencies" were working against him. *Id.* at 30:15-31:4.

With respect to Mr. Corral's competency to stand trial, Dr. Brinkley stated, as of March 5, 2025, Mr. Corral was competent to proceed. He qualified this conclusion with the opinion that Mr. Corral would "likely remain competent as long as he continues taking medication as prescribed," and if he stops taking medication, "he is likely to decompensate and become incompetent again." Dkt. 212 (sealed) at 55.

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 14

1    He testified that although Mr. Corral continued to display some unusual thinking,

2    it appeared Mr. Corral was able to "set those beliefs aside" in order to discuss how to

3    proceed with his case in a rational way. Dkt. 234 at 33:22-34:8. He explained that

4    having paranoid thoughts does not necessarily mean Mr. Corral, or another individual in

5    his situation, would be found incompetent. *Id.* 35:2-23. Dr. Brinkley further testified while

6    the additional time Mr. Corral was on medication was helpful, instead of an

7    approximately 50-day period [January 14 to March 5, 2025] it would have been "better if

8    he had been on that medication for 120 days, or 150 days, or 180 days" by the time he

9    conducted the evaluation. Dkt. 234 at 43:1-5.

10    During the hearing, Dr. Brinkley testified Mr. Corral's competency is "fragile." *Id.*

11    at 33:15. Dr. Brinkley testified it can take up to 180 days to see the full benefits of

12    psychiatric medication, and at the time the evaluation was completed, Mr. Corral had

13    only been on psychiatric medication for about 60 days. *Id.* at 33:21-25. Dr. Brinkley

14    expressed concerns about Mr. Corral's willingness to consistently take a therapeutic

15    dose of his antipsychotic medication. *Id.* at 34:1-9.

16    Dr. Brinkley testified that details about Mr. Corral's experiences after March 5,

17    2025, would be important for purposes of evaluating his competency to stand trial, and

18    Dr. Brinkley has not had the opportunity to review any of Mr. Corral's documentation

19    from FMC Devens since March 5, 2025, and could not opine whether Mr. Corral was

20    competent as of the date of the hearing without a reassessment. *Id.* at 42:1-7.

21    When cross-examined by Mr. Corral's defense counsel during the hearing,

22    counsel asked Dr. Brinkley the following questions at the request of Mr. Corral: (1) do

23    you have any knowledge of anyone deploying any technology against him [Mr. Corral]

24
FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 15

1   during the time he was at FMC Devens? (2) do you have knowledge of anyone pumping

2   gas into his [Mr. Corral's] cell at any time that he was at FMC Devens? and (3) do you

3   have any knowledge of anyone distributing earpieces during the time that he [Mr.

4   Corral] was at FMC Devens? *Id.* at 43:25-44:9. Dr. Brinkley testified that Mr. Corral's

5   request for his counsel to ask these questions would "potentially" raise concerns about

6   his competency. *Id.* at 44:10-13.

7        Dr. Brinkley did not have an opinion as to whether the Court should find Mr.

8   Corral "not restorable" or if he would benefit from further treatment in the event the

9   Court found Mr. Corral not currently competent to stand trial. *Id.* at 39:17-41:4.

10        2.  Dr. Diana Hamilton

11        Dr. Hamilton currently works for the BOP in the Psychology Services branch as a

12   forensic evaluator and has been employed with the BOP for nineteen years. Dkt. 234

13   45:13-25. Her current duty station is FMC Devens. *Id.*

14        Dr. Hamilton has a doctoral degree in clinal psychology from Williams James

15   College with a specialization in forensic psychology and is licensed in Texas and

16   Massachusetts. She has conducted approximately 40 competency evaluation and has

17   been qualified as an expert in federal court at least a dozen times. *Id.* at 46:8-9. The

18   Court found that Dr. Hamilton was qualified to serve as an expert witness during the

19   hearing. Dkt. 234 at 46:24-47:4.

20        Dr. Hamilton reviewed Mr. Corral's case-related documentation, including Dr.

21   Brinkley's report, and met with Mr. Corral while he was at FMC Devens on

22   approximately three occasions. *Id.* at 50:5-9. During those interactions, Dr. Hamilton

23   testified Mr. Corral was mentally stable and consistently expressed a desire to be found

24

competent. *Id.* at 51:14-18. Dr. Hamilton further testified Mr. Corral did not express

anything regarding conspiracies to her after March 5, 2025. *Id.* at 52:9-12. She opined

that Mr. Corral's mental health improved over time. *Id.* at 52:18-23.

Since the defendant left FMC Devens on May 7, 2025, Dr. Hamilton testified she

has had no contact with Mr. Corral. She expressed that it was relevant and important to

consider Mr. Corral's behavior in the time after he left FMC Devens for purposes of

competency restoration. *Id.* at 54:21-55:10. She also testified that if Mr. Corral was no

longer taking medication, it could potentially cause her concern regarding his ability to

rationally understand the proceedings and assist his counsel in his defense. *Id.* at

56:18-23. Dr. Hamilton was unable to confirm whether Mr. Corral left FMC Devens with

a prescription of his medication. Dkt. 234 at 60:15-21.

Counsel for Mr. Corral asked Dr. Hamilton the same questions relating to her

knowledge about the deployment of technology, gas being pumped, and earpieces at

Mr. Corral's request. *Id.* at 61:14-23.

The Court informed Mr. Corral of his right to testify, twice during the hearing; Mr.

Corral chose not to testify at the competency hearing. *Id.* at 64:20-65:10; 79:20-82:4. He

did request his attorney to ask the Court for an evidentiary hearing so that he could

prove his allegations that there is a "gas enterprise against him," a "sophisticated

thought apparatus" used to listen to his thoughts, and mind erasers. *Id.* at 62:17-64:2.

Mr. Corral also requested the Court to provide him with the resources to undergo a

brain scan to show the damage to his brain tissue. *Id.*

1    The Court held an in-camera colloquy with defense counsel and Mr. Corral to ask

2    defense counsel about the relationship between the defendant and defense counsel.

3    Dkt. 234 at 83.

4    At the close of the hearing, both the prosecution and the defense presented

5    argument, and both parties took the position that the defendant is not presently

6    competent to stand trial[1]. The parties differed, however, in their opinions as to whether

7    Mr. Corral should undergo additional competency restoration treatment, or be

8    involuntarily committed because Mr. Corral's competency cannot be restored.

9    Neither Mr. Corral's counsel nor the Government's counsel were able to confirm

10   whether Mr. Corral was consistently taking his medication since leaving FMC Devens.

11   Dkt. 234 at 72:18-73:1; 75:22-76:2. Ms. Mazenko stated that Mr. Corral "has very clearly

12   asked me to advocate against medication and has clearly asked me to assist him in not

13   being required to take it." Dkt. 234 at 78-79. Ms. Mazenko, during argument, indicated

14   that Mr. Corral "still suffers from delusions of conspiracy, rendering him unable to assist

15   in his own defense." *Id.*  at 75. She also stated that the Court should keep in mind that

16   "Dr. Brinkley believed that the change in Mr. Corral's competency from February 16th to

17   March 5th, when he rounded the corner to competency, as he was quoted in the reports,

18   was due to additional time on medications." *Id.* at 76.

19   Mr. Corral's behavior during the hearing was calm for the beginning and middle

20   of the hearing, but he became more agitated as the hearing was into the second hour of

21   proceedings. *See, e.g.*, Dkt. 234 at 78 (Mr. Corral makes aggressive remarks about the

22   individuals in the Court "going down"), 87-88 (counsel for the government inform the

23

24   _____

[1] While counsel presented their arguments, Mr. Corral spoke over counsel several times demonstrating his agitation. Dkt. 234 at 70:7-14, 76:17-18, 77:16-17; 78:19-20.

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 18

Court that they heard Mr. Corral making threatening remarks while the hearing was going on, such as "You're going to be f…ed when I get out of here" and "I swear to God, I'm going to start riots"; to which Mr. Corral responded by stating, "that's what happens when you have conspiracies in courts, and you pump stupid gas, and you make somebody stupid; they riot.")

## C. Recommendation regarding decision about defendant's present competency

The Court should hold that, although Defendant Dylan Corral has adequate factual knowledge of the proceedings, by a preponderance of the evidence the record shows he does not currently demonstrate: (1) a rational understanding concerning the nature and object of the proceedings, (2) the ability to consult with his lawyer, or (3) the ability to assist in preparation of their defense. *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Even while he was taking anti-psychotic medications (involuntarily) between January 14 and May 7, 2025, Mr. Corral continued to have conversations with his attorney, and with the evaluation team at FMC Devens, about the conspiracy and how his current attorney and the Court were part of the conspiracy. At the hearing on June 10, 2025, Mr. Corral asked his attorney to tell the Court that there should be an evidentiary hearing about mind erasers, gas enterprise, a sophisticated thought-listening apparatus, earpieces being handed out to inmates and that five deputies and five inmates should be allowed to testify to these allegations. Dkt. 234 at 63-63. Mr. Corral believes they would testify "that this gas enterprise began in the California healthcare facility and was moved to the Sacramento County Jail and Boston and back

1  to the Sacramento Jail." Mr. Corral also requested a brain scan, because he believes it

2  will show that psycho surgery was conducted on him, by chemicals that came in through

3  the vents of his cells and damaged his brain tissue. Dkt. 234 at 64, 79-81.

4      While the defendant was undergoing treatment at FMC Devens Mr. Corral's

5  attorney expressed concerns about the defendant's inability to work with her and

6  inability to rationally understand how to assist with his defense, because his

7  understanding and his communication were not rational – they were altered by his

8  delusions. During the hearing, Mr. Corral's attorney stated he was not presently able to

9  assist in his defense or consult with counsel because of his belief in a conspiracy and

10  delusions that his attorney and many other individuals were involved in it, starting with

11  the medical center in Los Angeles where his first competency evaluation was done in

12  this case, and extending to all the places he has been held since then.

13      Other Federal Courts, including the Ninth Circuit, have found that there was bona

14  fide doubt regarding a defendant's competence in cases where defense counsel has

15  proffered evidence that the defendant would no longer be able to assist rationally in his

16  defense because he believed his attorney was part of a greater conspiracy against him.

17  *See, e.g.*, *Torres v. Prunty*, 223 F.3d 1103, 1109 (9th Cir. 2000), overruled in part on

18  other grounds by *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (explaining that

19  defendant's counsel was in the best position to evaluate defendant's competence and

20  ability to render assistance in case; defendant believed counsel and judge were part of

21  conspiracy, and while her recommendation to the judge, while not necessarily sufficient

22  to create a bona fide doubt, should have been considered seriously by the court); *Deere*

23  *v. Woodford*, 339 F.3d 1084, 1085 (9th Cir. 2003), *as amended on denial of reh'g* (Oct.

24

2, 2003) (holding that a competency hearing should have been held in case where psychiatrist stated in a declaration that plaintiff understood the nature of the criminal proceedings, yet his mental disorders rendered him unable to assist counsel in the conduct of a defense in a rational manner.); *United States v. Nagy,* No. 96-CR601, 1998 WL 341940, at *7 (S.D.N.Y. June 26, 1998) (defendant's paranoid delusions of conspiracy against him rendered him unable to assist in his defense despite factual understanding of role of lawyers and judge in courtroom), *aff'd* 173 F.3d 847, 1999 WL 245869 (2d Cir.), *cert. denied,* 528 U.S. 840 (1999); *United States v. Ghane*, 490 F.3d 1036, 1040 (8th Cir. 2007) (finding that the district court did not err by relying on doctors' opinions that defendant had a factual understanding of the charges against him, but his understanding was not rational because he believed the charges were part of a wide ranging government conspiracy).

By a preponderance of the evidence, based on the March 5, 2025 expert report, testimony of the witnesses, exhibits, information provided by counsel during the hearing, and Mr. Corral's conduct during the hearing, the Court should find Mr. Corral is presently suffering from a mental disease or defect that would render him mentally incompetent; he factually can comprehend the nature and consequences of the proceedings against him but he does not have a rational understanding and is unable to rationally consult with counsel or assist in his defense. 18 U.S.C. §§ 4241.

Regarding the next steps, the Court should order Mr. Corral's continued commitment because the record shows "there is a substantial probability that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward." *U.S. v. Loughner,* 672 F.3d 731, 766-772 (9th Cir. 2012).

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 21

1    Counsel for Mr. Corral persuasively pointed out that Mr. Corral, at the time of Dr.

2    Brinkley's report on March 5, 2025, had just "turned the corner" to competency and that

3    was after about 60 days of treatment with anti-psychotic medication. Dr. Brinkley opined

4    that about 180 days of treatment would be necessary to have sustained improvement in

5    symptoms.

6          Between March 5 and May 7, 2025, Dr. Brinkley did not observe or talk with Mr.

7    Corral in a clinical setting, and he had not evaluated Mr. Corral between May 7 and

8    June 10, 2025; therefore, Dr. Brinkley did not have an opinion about whether Mr. Corral

9    had either deteriorated, or stabilized, or if Mr. Corral was currently incompetent to stand

10   trial -- how long it would take for Mr. Corral to achieve "capacity to permit the

11   proceedings to go forward."

12         The expert report and testimony from the forensic psychologists shows Mr.

13   Corral's symptoms improved over the time he was treated at FMC Devens. His behavior

14   during the hearing shows he can control himself at times, and is able to understand his

15   right to testify, and right to not testify. This would suggest he comprehends the nature of

16   the competency proceedings enough to participate in a meaningful way. Yet, he also

17   was angry or frustrated, and his behavior and speech showed lack of control and his

18   calm communication switched to threatening and repeated outbursts. The content of

19   that communication shows lack of ability to rationally assist in his defense, and his

20   relationship with counsel shows it would be beyond his ability to effectively and

21   rationally communicate with his attorney about strategic information and choices relating

22   to the facts of the offense, potential defenses, and objectives and strategies for the

23   litigation.

24

1    In the alternative, if the Court does not find there is a "substantial probability" Mr.

2    Corral will attain the capacity to permit his case to go forward with continued

3    commitment, the Court should consider whether to take steps that would evaluate the

4    defendant's dangerousness and determine if Mr. Corral should be indefinitely committed

5    under Section 4246. The Government argued that the evidence supports this option, but

6    the prosecution raised this argument for the first time during the hearing. Mr. Corral had

7    not received notice under Section 4246, 4247, as to the request for indefinite

8    commitment or notice of the prosecution's proof regarding potential for future

9    dangerousness.

10    **CONCLUSION**

11    Based on the above analysis and reasoning, the Court should order the

12    defendant to be committed to the custody of the Attorney General for restoration of his

13    mental competency. 18 U.S.C. § 4241(d). The Court should find "there is a substantial

14    probability that within such additional period of time [the defendant] will attain the

15    capacity to permit the proceedings to go forward." *U.S. v. Loughner,* 672 F.3d 731, 766-

16    772 (9th Cir. 2012).

17    In the alternative, if the Court decides there is *not* a substantial probability that

18    Mr. Corral will attain the capacity to allow this case to go to trial, the Court should

19    consider whether Mr. Corral should be indefinitely committed under Section 4246. *See,*

20    *U.S. v. Rivera-Morales,* 365 F. Supp.2d 1139, 1141-1146 (S.D. Cal. 2005). If the Court

21    chooses this step, it must follow the procedures under Section 4246, and the defendant

22    must receive notice under Sections 4246, 4247, and the defendant must receive notice

23    of the government's proof regarding potential for future dangerousness. *U.S. v.*

24

1    *Loughner,* 672 F.3d 731, 751-752 (9th Cir. 2012); *U.S. v. Baker,* 807 F.3d 1315, 1323-

2    1325 (6th Cir. 1986).

3        Pursuant to 28 U.S.C. § 636(b)(1), (b)(3) and Fed. R. Crim. P. 59, the parties

4    shall have fourteen (14) days from service of this Report to file written objections.  *See*

5    *also* United States District Court for the Eastern District of California Local Rule of

6    Criminal Procedure 430.1(j).

7        The Magistrate Judge's Findings and Recommendation will be reviewed *de novo.*

8    *U.S. v. Rivera-Guerrero,* 377 F.3d 1064 (9th Cir. 2004).

9        Failure to file objections will result in a waiver of those objections for purposes of

10   *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a

11   waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140,

12   142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

13   Objections are due within 14 days after service of these Findings and Recommendation.

14

15       Dated this 13th day of June 2025.

16

17       *Theresa L. Fricke*

18       Theresa L. Fricke
         United States Magistrate Judge

19

20

21

22

23

24

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 24