UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA AT SACRAMENTO

UNITED STATES OF AMERICA,

Plaintiff,

v.

DYLAN CORRAL,

Defendant.

CASE NO.    2:22-cr-0048 JCC TLF

FINDINGS AND RECOMMENDATION ON WITH PROPOSED FINDINGS OF FACT PURSUANT TO FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241, 4247

The District Court has referred, under 28 U.S.C. § 636(b)(1)(A), (B) and Fed. R. Crim. P. 59, the hearing on  whether defendant is presently competent to stand trial . Dkt. 213. The District Court reviews the Magistrate Judge's report and findings under a *de novo* standard of review for dispositive rulings, evidentiary hearings, and if there are Constitutional issues to be resolved. *United States v. Raddatz,* 447 U.S. 667, 683 (1980); *United States v. Rivera-Guerrero,* 377 F.3d 1064, 1070-71 (9th Cir. 2004); *Reynaga v. Cammisa,* 971 F.2df 414, 416 (9th Cir. 1992). If the District Judge delegates an evidentiary hearing in a felony criminal case to a Magistrate Judge, and the District

Judge decides not to follow the Magistrate Judge's credibility determination, a new evidentiary hearing, conducted by the District Judge, is required. *Johnson v. Finn,* 665 F.3d 1063, 1075-1076 (9th Cir. 2011); *United States v. Ridgway,* 300 F.3d 1153, 1154 (9th Cir. 2002).

The record shows that Mr. Corral remains incompetent to stand trial. The Court should hold that, reviewing the expert evidence and other information presented during the hearing, by a preponderance of evidence, defendant is presently mentally incompetent to stand trial. The Court should find, because of symptoms due to mental disease, schizoaffective disorder, bipolar type, Mr. Corral does not have "sufficient present ability to consult with [their] counsel with a reasonable degree of rational understanding – and whether [they have] a rational as well as factual understanding of the proceedings." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

The Court should also hold the government has not shown, by clear and convincing evidence, that all four factors have been met, as required under *Sell v. United States,* 539 U.S.166 (2003) and the Court should deny the government's motion for involuntarily medication.

The Court has the option of deciding whether Mr. Corral should have another period of treatment to restore competency under 18 U.S.C. § 4241. The Court also has the option of allowing FMC Devens to follow up on the certificate of dangerousness that was filed by FMC Devens Warden F.J. Bowers. Dkt. 267-1 (sealed). It appears Warden Bowers is proposing that a hearing under 18 U.S.C. § 4246 should be held in the District of Massachusetts to determine whether Mr. Corral meets the criteria for an order of involuntary civil commitment. *See generally United States v. Godinez-Ortiz,* 563 U.S.

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 2

1022, 1029-32 (9th Cir. 2009) (holding that the District Court had authority to temporarily return defendant to the federal medical center for a decision on whether to issue a certificate of dangerousness and whether a hearing should be held on criteria for an involuntary civil commitment); *United States v. Rendon-Romero,* 743 F. Supp. 3d 715, 724-26 (E.D.N.C. 2024) (District Court may order a short period of custody under 18 U.S.C. § 4241(d)(2)(B) to allow the Bureau of Prisons to conduct a risk assessment and potentially seek a hearing under 18 U.S.C. § 4246(a)).

**BACKGROUND**

**A. Competency Hearing in 2025, Followed by Treatment at FMC Devens**

Defendant Dylan Corral stands charged under 18 U.S.C. § 876(c) with two counts of mailing interstate threats. Dkt. 1. The Indictment states that Mr. Corral sent by U.S. Postal Service two written documents, the first on August 13, 2021, and the second on September 3, 2021, addressed to a United States Judge at the U.S. District Court for the Eastern District of California, at Sacramento, and each of these documents contained a threat to injure that United States Judge (K.J.N.). *Id*. The Indictment was filed March 3, 2022. *Id.*  District Judge John C. Coughenour ordered the defendant detained on June 17, 2022. Dkt. 10.

Mr. Corral was found competent to stand trial in 2023 (Dkt. 86, Order of Judge Coughenour dated 6-29-2023); he was found not competent to stand trial in 2024 (Dkt. 203, Order of Judge Coughenour dated 8-19-2024), and after being hospitalized for restoration of competency, on April 4, 2025, FMC Devens Warden F.J. Bowers submitted a certificate of competency as to Mr. Corral. Dkt. 212 (sealed).

Upon receipt of the Warden's certificate on April 4, 2025, the Hon. John

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 3

Coughenour referred the matter to the Magistrate Judge. Dkt. 213. The competency hearing took place on June 10, 2025. Dkt. 231.

Based on Judge Fricke's Report and Recommendation, Judge Coughenour found Mr. Corral was not competent to stand trial on July 31, 2025. Dkt. 246.

Judge Coughenour determined that Mr. Corral was incompetent to proceed, ordered him committed to the custody of the Attorney General to be hospitalized for treatment, and on March 20, 2026, and March 31, 2026, ordered additional treatment periods to restore competency. Dkt. 246, 251, 253.

**B. Report of Dr. Hamilton; Order Concerning *Harper* Hearing; Certificate of Competency; Certificate of Dangerousness**

On March 18, 2026, Dr. Diana Hamilton notified the Court that she required additional time to complete her report concerning Mr. Corral's competency; on March 31, 2026, FMC Devens Warden F.J. Bowers submitted a certificate of competency as to Mr. Corral. Dkt. 218, 254 (sealed). Dr. Hamilton filed her report on March 31, 2026. Dkt. 286, government's exhibit 1.

Judge Coughenour ordered on April 8, 2026 that defendant be transported to the Eastern District of California for the hearings. Dkt. 260. That order also directed FJC-Devens to hold another administrative hearing under 28 C.F.R. § 549.46 to determine whether an order for involuntary administration of medication should continue to be in effect while defendant was in the custody of the U.S. Marshals. Dkt. 260 at 2.

A certificate of dangerousness was issued by Warden F.J. Bowers on April 20, 2026 concerning the defendant's conduct at FMC Devens while defendant was being treated to restore competency. Dkt. 267-1 (sealed). Warden Bowers stated that under

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 4

18 U.S.C. § 4246(a), he was requesting a hearing "to determine whether Mr. Corral should be committed to the custody of the Attorney General at FMC Devens pursuant to 18 U.S.C. § 4246(d)." *Id.* Warden Bowers also confirmed that "FMC Devens Social Work staff have contacted Mr. Corral's state of domicile, California, and have determined that suitable arrangements for state custody and care are not presently available." *Id.*

Judge Coughenour has referred to Magistrate Judge Fricke competency hearings and related matters. Dkt. 30, 37, 113, 251, 253, 260. The most recent competency hearing, a status hearing concerning defendant's request to discharge his attorney, and the government's motion for hearing under *United States v. Sell,* were held on June 30, 2026. Dkt. 289, 291, 292.

**DISCUSSION**

**A. Legal Standards**

"At any time after the commencement of a prosecution for an offense and prior to the sentencing," a court may order a hearing to determine the mental competency of a defendant. 18 U.S.C. § 4241(a). Upon the parties' motion, or *sua sponte* if there is reasonable cause to question the defendant's competency, the Court must hold such a hearing. 18 U.S.C. § 4241(a).

The Court must determine "by a preponderance of the evidence" whether "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d).

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 5

If the Court finds the defendant is not competent, the Court must "commit the defendant to the custody of the Attorney General" for hospitalization and treatment to restore competency. 18 U.S.C. § 4241(d).

A defendant is considered competent if they have:

- a rational and factual understanding concerning the nature and object of the proceedings;
- the ability to consult with their lawyer; and
- the ability to assist in preparation of their defense.

*Drope v. Missouri,* 420 U.S. 162, 171 (1975).

"[T]he criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma,* 517 U.S. 348, 354 (1996); *Medina v. California,* 505 U.S. 437, 453 (1992); *Drope,* 420 U.S. at 171-72. A defendant is competent to stand trial if they have "'sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding' and has 'a rational as well as a factual understanding of the proceedings against [them].'" *Godinez v. Moran,* 509 U.S. 389, 396 (1993) (quoting *Dusky,* 362 U.S. at 402).

To make this determination, the Court considers the following factors, any one of which – standing alone – may, in some circumstances, be sufficient to prove incompetence to stand trial: evidence of the defendant's irrational behavior; defendant's demeanor in the courtroom; and prior medical opinions concerning the defendant's competence to stand trial. *Drope,* 420 U.S. at 180; *Miles v. Stainer,* 108 F.3d 1109, 1112 (9th Cir. 1997).

Under 18 U.S.C. § 4241(d)(1), after being found incompetent to stand trial, the defendant may be hospitalized for a reasonable time, not to exceed four months. If the director of the facility believes the defendant has become competent after being committed for the competency restoration, they will inform the Court and a competency hearing will be set. If the Court finds by a preponderance of the evidence the defendant has been restored to competency, a trial date will be set. *United States v. Quintero,* 995 F.3d 1044, 1054-56, 1059-60 (9th Cir. 2021).

If the Court finds the defendant has not been restored to competency after this period of commitment for competency restoration, there are three options. First, under 18 U.S.C. § 4241(d)(2)(A), if there is a substantial probability that the defendant will become competent in the foreseeable future, then continued commitment is allowed, but only if the Court finds "there is a substantial probability that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward." *United States v. Loughner,* 672 F.3d 731, 766 (9th Cir. 2012); *see also United States v. Ceasar,* 30 F.4th 497, 501-502 (5th Cir. 2022) (warden's certification of competency does not undermine the Court's authority to order additional commitment period).

Second, if the Court finds there is a substantial probability that Mr. Corral will "attain the capacity to permit the proceedings to go forward," the Court may order involuntary medication to enable the defendant to become competent for trial if four criteria are met. *United States v. Brooks,* 750 F.3d 1090, 1093, 1097 (9th Cir. 2014). This is disfavored and such hearings adjudicate whether the defendant should be involuntarily medicated – not whether they should have another period of commitment

for restoration of competency. *Sell v. United States,* 539 U.S. 166, 179 (2003); *Rivera-Guerrero,* 426 F. 3d at 1137.

Third, if the Court finds there is *not* "a substantial probability that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward" the Court may order a hearing to determine whether the defendant suffers from a mental disease or defect and that upon release the mental disease or defect would "create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(a); *United States. v. Godinez-Ortiz,* 563 F.3d 1022, 1029-32 (9th Cir. 2009); *United States. v. Rivera-Morales,* 365 F. Supp.2d 1139, 1141-46 (S.D. Cal. 2005).

If a hearing is ordered on the issue of whether the defendant should be indefinitely committed under Section 4246, the defendant must receive notice under Sections 4246, 4247, as to the civil commitment hearing, and the defendant must receive notice of the government's proof regarding potential for future dangerousness. *Loughner,* 672 F.3d at 751-52; *United States v. Baker,* 807 F.3d 1315, 1323-25 (6th Cir. 1986). The standard for this type of commitment is whether the defendant "has a serious mental illness . . . is dangerous to himself or others and the treatment is in the inmate's medical interest." *Loughner,* 672 F.3d at 752(*quoting Washington v. Harper,* 494 U.S. 210, 227 (1990)).

**B. Proposed findings of fact as to competency (proved by a preponderance of evidence) and as to the *Sell* factors (proved by clear and convincing evidence)**

At the hearing, the government presented two witnesses to testify: Special Agent Nathaniel Adler of the FBI and Dr. Diana Hamilton, Ph.D., Clinical Psychologist with the U.S Bureau of Prisons, FMC Devens.

Special Agent Adler acquired audio files from phone conversations between defendant and his family members. Dkt. 297 [transcript] at 9-13; Dkt. 276-283, 285. He also acquired information from the Sacramento County Jail relating to defendant's conduct while he was housed there, before he was sent to MC Devens for treatment to restore competency. *Id.*

Dr. Hamilton prepared a report finding that Mr. Corral had been restored to competency, and Warden Bowers confirmed on March 31, 2026 that Dr. Hamilton's report had been submitted. Dkt. 286-1, 286-2. According to Dr. Hamilton's report, and her testimony during the competency hearing, after defendant arrived at FMC Devens on September 24, 2025, Dr. Hamilton and Dr. Dean Cutillar, a psychiatrist, met with Mr. Corral on September 29, 2025. Dkt. 297 at 21-22. At first, the decision was made at FMC Devens to place defendant in a secure housing unit, but after Dr. Hamilton and Dr. Cutillar determined that he appeared to be stable, Mr. Corral was placed in an open housing unit with a roommate. *Id.* at 21-25.

Mr. Corral refused to voluntarily take oral anti-psychotic medication when he left FMC Devens on May 7, 2025 (before the June 2025 competency hearing) and had been off medication since then. *Id.*

Mr. Corral was diagnosed with schizoaffective disorder, bipolar type, by Dr. Saldana; Dr. Hamilton stated that it continues. *Id.* at 19-21. When he is not taking appropriate psychiatric medication for this condition, his symptoms are persecutory

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 9

delusions and mood dysregulation. *Id.* There may be changes in mood, yet the delusions and psychosis remain, even though they may wax and wane. *Id.* The symptoms of psychosis mean he is not connected to reality when he experiences the delusions. *Id.*

On December 2, 2025, defendant was placed in the secure housing unit because he acted aggressively toward staff. *Id.* at 20-25.

When Dr. Hamilton talked with the defendant on December 8, 2025 about his aggressive acts toward staff on December 2, he told her that law enforcement was treating him unkindly and unjustly through several periods of incarceration. Dkt. 297 at 25. On December 9, when she and Dr. Cutillar met with defendant again, she became concerned about whether he was experiencing delusions that he could not control or set aside because he communicated to her about the large conspiracy that he had previously talked about during his previous competency restoration period. *Id.* at 26-27.

After learning that a forced medication hearing under *Washington v. Harper*, 494 U.S. 210, 221-222 (1990) would be held, on December 10, 2025, the defendant again acted aggressively, making assaultive gestures while in his cell toward Dr. Dean Cutillar, who was outside the cell and observing him through a window as he stood having a conversation with the defendant on the other side of the door. *Id.* at 28.

A due process *Harper* hearing was conducted on December 19, 2025 to determine if treatment with involuntary antipsychotic medication was required to prevent Mr. Corral from being a danger to himself and others. *Id.* When the *Harper* hearing was finished, Mr. Corral was found to be dangerous to self or others. *Id.* at 28-31. On December 22, 2025, after he learned that an order allowing forced antipsychotic

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 10

medication was the result of the *Harper* hearing, defendant made sexually aggressive statements to MC Devens staff. *Id.* He punched at the windows of his cell door and he yelled that he was going to kill a staff member and kill children. *Id.*

He received his first dose of involuntary antipsychotic medication on December 23, 2025. Dkt. 297 at 30-33. This was an injection of Risperdal – an antipsychotic medication, an injection of Ativan – antianxiety medication, and an injection of Benadryl (to reduce any allergic reaction to the other drugs). *Id.* On the way back to his cell, he threatened to kill children with a machete, stated that he was going to get all the people at the facility arrested, and stated that he was going to kill all the people who were there. Dkt. 297 at 31-32.

Later that day, Dr. Cutillar talked with Mr. Corral. Defendant was angry and told Dr. Cutillar he would charge him with conspiracy, also stated that Dr. Hamilton had lied to him when she said there was not any gas being administered to him, and she lied when she said nobody was listening to his thoughts, and he stated that everyone was listening to his thoughts through earpieces. *Id.* The defendant told Dr. Cutillar that, when he is released, he will kill Dr. Cutillar and he will kill children. *Id.*

During a one-month period in January 2026, defendant informed Dr. Hamilton that he was venting and would not hurt anyone. *Id.* at 32-35. They had some productive conversations and Mr. Corral seemed to be responding well to the medications. *Id.* The defendant did not react well to Dr. Cutillar – defendant continued to yell and make "unflattering" comments to him. Dr. Cutillar reviewed the medications and made an adjustment, by adding Abilify, and increasing the dosage of Ativan. *Id.* On January 22, 2026, Depakote (a mood stabilizer) was added to the medication regimen. *Id.* at 63.

On January 25, 2026, defendant spoke aggressively on the phone being monitored by FMC Devens staff. Defendant said he was going to kill someone upstairs and made threats to kill another inmate in FMC Devens. *Id.* at 34-35.

On February 2, 2026, defendant stated to Dr. Hamilton that he believed she lied on the witness stand and that she had been passing out earpieces and causing gas to be pumped into his cell. *Id.* at 35-37. He also asked if he could have his medications administered in a different way. *Id.*

Dr. Hamilton and Dr. Cutillar met with defendant on February 9, 2026; Mr. Corral reiterated his desire to have medications adjusted. *Id.* Dr. Cutillar made changes-- Benadryl and Ativan were discontinued, the Risperdal and Abilify were administered orally, and blood tests confirmed whether he was compliant. Dkt. 297 at 36. Mr. Corral participated in competency restoration group sessions. *Id.* at 37.

On February 26, 2026, Mr. Corral was moved to the open housing area because his behavior had improved. *Id.* at 37. On March 17, Dr. Hamilton interviewed the defendant and determined that he understood his legal situation and told Dr. Hamilton that he could work through issues by communicating with his attorney. *Id.* at 37-39. Dr. Hamilton determined that he was not 100% compliant with his medications; he was 79% adherent to the Risperdal (antipsychotic) medication, 88% compliant with Depakote, and 89% compliant with Abilify (an antipsychotic medication). *Id.* at 39. By the end of the competency evaluation period, Mr. Corral was taking oral medications Abilify and Depakote. *Id.* at 64.

Dr. Hamilton testified that, because the defendant was "deeply opposed" to taking antipsychotic medication, she was concerned about his prognosis. *Id.* at 40. She

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 12

opined that if Mr. Corral stopped taking medication that was prescribed to him at FMC Devens during his most recent hospitalization, that would "pose a high risk of his symptoms returning, his psychotic symptoms returning." *Id.* at 44.

Dr. Hamilton listened to the audio recordings of Mr. Corral's recent phone conversations with his family in preparation for the hearing. *Id.* at 46. She testified that his statements about holding law enforcement accountable, deriding his attorneys, and alleging that he was going to fire his attorney, and that his current attorney should receive the death penalty for kidnapping him, were consistent with her experience with him when he was having psychotic symptoms, being overwhelmed with delusions, and not taking medication. *Id.* at 46-48. She stated "[h]e sounds like the Mr. Corral I know who is not taking his medication." *Id.* at 46. She also observed that the calls show Mr. Corral has a broken relationship with his attorney, he claims his lawyer is part of a grand conspiracy, and he has completely lost faith in his attorney's ability to defend. *Id.* at 47.

Dr. Hamilton testified that Mr. Corral was not actually discussing the charges, and instead he was talking about the toxic gases, that everybody is wearing an earpiece, and the only way this can be addressed is through violence. Dkt. 297 at 46-49. She stated that, when she listened to the recordings of his conversations, she observed that Mr. Corral cannot set the psychotic symptoms aside. *Id.* at 61-62. When this happens, the reemergence of delusions, which have previously rendered him not competent, prevent him from being able to work through his case and effectively have a relationship with his attorney. *Id.* at 61-62. When he is agitated, he resorts to racist and aggressive language, which would be problematic during trial. *Id.* at 62.

Dr. Hamilton also reviewed the information about incident reports provided by the Sacramento County Jail. *Id.* at 51. She pointed out these reports indicated Mr. Corral had been cited for being violent. *Id.*

Dr. Hamilton opined that for about half of the time he was at MC Devins between September 24, 2025 and May 21, 2026, he was able to set aside his delusions. Dkt. 297 at 62. Dr. Hamilton stated that the content of the phone conversations Mr. Corral had recently with his family members caused her to be concerned that he was having delusions again and that "there is a good chance" his delusions would interfere with his ability to work with his attorney. Dkt. 297 at 70-74.

Mr. Corral decided to testify on his own behalf. *Id.* at 76-99. He stated that despite his delusions, he does have the ability to understand his legal situation, and he can effectively work with his attorney. *Id.* at 79-80. He asserted that he was telling his family members about his delusions, but he could differentiate between telling family members and telling a jury or his attorney about them. *Id.* at 80. He believes he would be able to compartmentalize and not let the delusions affect his defense. *Id.* at 82-85.

When the defendant was asked on cross-examination about his conversation with a family member, during which he told them he would strap a bomb on his body, and about how it was necessary to use violence, he said it was a hypothetical. *Id.* at 95-96. Mr. Corral confirmed that he thinks his lawyer should get the death penalty, but he can set it aside and talk to her about defense strategy, and he has a factual and rational understanding of the case to assist in his defense. *Id.* at 99.

During the portion of the hearing where additional testimony was taken relating to the *Sell* factors, the government estimated the guideline sentencing range would be 92-

115 months. Dkt. 297 at 109. As of the end of June 2026, the defendant has been in custody for about 49 months. *Id.* The defense estimated the low end of the guideline range to be 87 months or less. *Id.* at 110. The nature of the offense is two counts, each involving a written threat of bodily harm, mailed to a federal judge. Dkt. 1.

Dr. Hamilton testified that in her opinion, Mr. Corral, if found not competent to stand trial at this time, can be restored within a three-to-four-month period to competency with involuntary administration of antipsychotic medication. *Id.* at 115-118. The longer Mr. Corral stays on antipsychotic medication, the better chance he would have to be competent to stand trial. *Id.* at 122. Dr. Hamilton opined that Mr. Corral would not take antipsychotic medication on a voluntary basis; he has been offered voluntary antipsychotic medication, but he has consistently refused, and he is deeply opposed to antipsychotic medication. Dkt. 297 at 121,130.

Dr. Hamilton stated that the most common side effects of the antipsychotic medications are muscle tension and tremors. *Id.* at 119-120. She opined that side effects can be monitored by quickly adjusting the dosage or modifying types of medications. *Id.* She stated that at the end of his competency restoration period in March 2026, he was administered Abilify, an antipsychotic, and Depakote, a mood stabilizer; she confirmed that, to her knowledge, there were no side effects happening at that time that would interfere with his competency to stand trial. Dkt. 297 at 120. Although she acknowledged that defendant complained of severe side effects involving sexual dysfunction, Dr. Hamilton stated that she and Dr. Cutillar opined they were not actually serious. *Id.* at 131.

As to alternative therapies, Dr. Hamilton stated that talk therapy, cognitive behavioral treatment, can take months if not years to be successful in restoring a person with psychotic symptoms to competency – because it takes time to build and maintain the patient's trust in the face of their delusions. *Id.* at 120-121. She could not give an opinion about whether talk therapy would work better than antipsychotic medication. *Id.*

Dr. Hamilton stated that she would recommend the treatment that Mr. Corral received for his condition, even if there were no criminal case and no need to restore him to competency to stand trial. *Id.* at 124. She stated this would be the least intrusive means likely to restore Mr. Corral's competency to stand trial. *Id.* at 122. But even if there was no criminal case, the antipsychotic medication and mood stabilizer he was prescribed at the end of his competency restoration period would be appropriate and in his best interest to reduce suffering and increase his functioning in general as a patient. *Id.* at 121-24.

Dr. Hamilton admitted she had never seen a *Sell* order. *Id.* at 127. She confirmed that it would be difficult to implement involuntary medication from FMC Devens while defendant was in trial in Sacramento, for the same reason a *Harper* order was not implemented after defendant left FMC Devens in May 2026. *Id.* at 125-27.

When asked by defense counsel whether Mr. Corral would be involuntarily civilly committed, Dr. Hamilton responded that if there was no *Sell* order, and if charges are dismissed, "the petition that FMC Devens has filed, pursuant to Section 4246(a), means that Mr. Corral would return to FMC Devens to wait for the District of Massachusetts to decide whether they order a full risk assessment for his risk of violence if released to the

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 16

community." Dkt. 297 at 127-129. She explained that additional process would take place, potentially resulting in a civil court hearing to determine whether the defendant meets the criteria for involuntary civil commitment under Section 4246. *Id.* at 128. If an order of civil commitment were entered, "he would be reviewed annually to determine whether his mental disease was in sufficient remission such that he no longer posed a risk of bodily harm to the community if he were released." *Id.*

Mr. Corral was successfully treated for his psychosis and mood disorder for purposes of allowing him to temporarily regain competency to stand trial. This is established by the sequence of events from the 2023-2026 competency hearings and reports, as documented in Dr. Hamilton's March 31, 2026 report.

Yet, after being restored to competency in 2024-2025, Mr. Corral did not continue taking the medications that he was being administered at FMC Devens. And the record shows that after several weeks of not receiving involuntary antipsychotic medication in May and June of 2026, he talked with his family about his delusions and made aggressive, threatening statements about law enforcement and attorneys, and continued to describe the delusions that he had been experiencing during the pretrial phase of this case.

Mr. Corral's delusions interfere with and negatively affect his ability to understand his case, and to understand how to communicate with his attorney. For example, Dr. Hamilton stated that Mr. Corral told her he could discuss and resolve disagreements with his attorney when he was on medications in March 2026. But in June 2026, a few weeks after leaving FMC Devens, he told his family he could not tolerate his attorney, she kidnapped him, and she would face the death penalty.

**C.  Recommendation regarding decision about defendant's present competency to stand trial**

The Court should hold that, although Defendant Dylan Corral has adequate factual knowledge of the proceedings, by a preponderance of the evidence, the record shows he does not currently demonstrate: (1) a rational understanding concerning the nature and object of the proceedings, (2) the ability to consult with his lawyer, or (3) the ability to assist in preparation of his defense. *Drope* 420 U.S. at 171.

He believes his attorney is part of a greater conspiracy against him. *See, e.g.*, *Torres v. Prunty*, 223 F.3d 1103, 1109 (9th Cir. 2000), *overruled in part on other grounds by Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (explaining that defendant's counsel was in the best position to evaluate defendant's competence and ability to render assistance in case; defendant believed counsel and judge were part of conspiracy, and while her recommendation to the judge, while not necessarily sufficient to create a bona fide doubt, should have been considered seriously by the court); *Deere v. Woodford*, 339 F.3d 1084, 1085 (9th Cir.), *as amended on denial of reh'g* (2003) (holding that a competency hearing should have been held in case where psychiatrist stated in a declaration that plaintiff understood the nature of the criminal proceedings, yet his mental disorders rendered him unable to assist counsel in the conduct of a defense in a rational manner).

By a preponderance of the evidence, based on Dr. Hamilton's expert report, her expert testimony, testimony of the defendant, exhibits, information provided by defense counsel during each of the hearings, and Mr. Corral's testimony during the competency

hearing, the Court should hold Mr. Corral is presently suffering from a mental disease that renders him not competent to stand trial. He factually can comprehend the nature and consequences of the proceedings against him but, because of psychotic symptoms, he does not have a rational understanding and is unable to rationally consult with counsel or assist in his defense. 18 U.S.C. §§ 4241, 4247.

Although Dr. Hamilton reported that, when defendant was involuntarily taking antipsychotic medication in March 2026, he was at that time competent to stand trial, the evidence of the phone conversations with his family that occurred after he left FMC Devens shows the psychotic symptoms, such as paranoia and intrusive delusions, had returned. He could try and mask the symptoms, but Dr. Hamilton testified that, after listening to the recorded phone conversations between defendant and his family, she was seriously concerned that the psychotic symptoms had become pronounced again. She inferred defendant stopped taking the medications because he had a firm stance against taking the antipsychotic medications and had never taken them willingly at FMC Devens. He was making statements about his attorney being subject to the death penalty, strapping an explosive device to his body, and other violence, and his current competency was therefore in doubt. Defense attorney Danica Mazenko expressed her concern at the end of the competency hearing (Dkt. 297 at 102-104) that defendant could not effectively communicate with her, and his symptoms prevented them from having a working relationship.

### D. Analysis and recommendation under *Sell v. United States*

In *Sell v. United States,* 539 U.S.166 (2003), the Court held the government may move for a court order to restore a defendant's competency to stand trial by involuntarily

medicating a defendant charged with a serious crime, if certain factors are met. Each of the factors must be proved by clear and convincing evidence before a Court may order involuntary medication. *United States v. Ruiz-Gaxiola,* 623 F.3d 684, 692 (9th Cir. 2010).

A *Sell* order involves a due process right that protects an individual's physical and mental autonomy. *Bean v. Matteucci,* 986 F.3d 1128, 1134-35 (9th Cir. 2021). Antipsychotic medication may affect "cognition, concentration, behavior, and demeanor"; and side effects may be serious, even fatal, and could include "irreversible neurological disorders." *Id.* (citations omitted). The physical coercion involved when a hospital administers involuntary antipsychotic medications has been described as:

> "[defendant] will be subject to a physically coercive response each time he refuses medication. Multiple staff will confront [defendant], overpower him, force him into restraints, and place him in isolation if necessary, until he is injected with antipsychotic drugs. That process will recur 'every day or multiple times a day' for as long as [defendant resists medication . . . . The process could last for months."
>
> *Id.* at 1134 (citations omitted).

First, the government must prove there are important governmental interests at stake. *Sell,* 539 U.S. at 180; *United States v. Gillenwater,* 749 F.3d 1094 (9th Cir. 2014). The Court reviews whether the alleged offense is sufficiently serious to support a finding that there is an important governmental interest; if it is sufficiently serious, then the Court considers whether special circumstances exist that would mitigate against the government interest. *United States v. Brooks,* 750 F.3d 1090, 1097 (9th Cir. 2014). The Court's starting point is the sentencing range; the Court should consider the specific facts of the alleged offense, and criminal history. *United States. v. Onuoha,* 820 F.3d 1049, 1055 (9th Cir. 2016). The length of time the defendant has already been detained can be considered

mitigating, but it does not completely remove the government's interest in prosecuting a crime. *Id.* at 1056-57 (holding that making threats of terrorism at an airport had a guidelines range of 27-33 months, defendant did not have criminal history and had already been detained more than 27 months, yet the charged offense was a serious crime and the government had a strong interest in prosecuting the defendant for generating public fear about terrorism).

In this case, the government estimated the guideline range would be 92-115 months. Dkt. 297 at 109. As of the end of June 2026, the defendant has been in custody for about 49 months. *Id.* The defense estimated the low end of the guideline range to be 87 months or less. *Id.* at 110. The nature of the offense is two counts, each involving a written threat of bodily harm, mailed to a federal judge.

This is undoubtedly a very serious charge, even if the threat of harm was not carried out. Four years is a substantial amount of time in pretrial custody; by comparison to the government's and defense estimates of the low-end of the guidelines range, it is between one-third and one-half the estimated low-end sentence. Holding the defendant accountable, and deterring threats against judges, is an important government interest. The defense has not shown special circumstances that would mitigate against this important interest. The Court should find the government has met the first factor by clear and convincing evidence.

Second, the government "must establish that 'involuntary medication will *significantly further*' its interest in prosecuting the defendant for the charged offense." *Ruiz-Gaxiola,* 623 F.3d at 695 (quoting *Sell,* 539 U.S. at 181 (emphasis in original)). The government must prove that involuntary administration of medication will make it

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 21

substantially likely that defendant will be rendered competent to stand trial. *Id.* And the government must prove the involuntary administration of medication will be substantially unlikely to produce side effects that will interfere significantly with defendant's ability to assist counsel in conducting the defense, rendering trial unfair. *Id.*

In this case, the Court should find the government has met the second factor by clear and convincing evidence. Dr. Hamilton testified that Mr. Corral's competency had previously been restored while he was involuntarily medicated. She opined that the antipsychotic and mood regulating medications he was involuntarily taking in March of 2026, if administered under a *Sell* order, would be an effective treatment to restore him to competency in three to four months, and throughout a trial if he continued to take the medication. She testified that, in March 2026, he was administered Abilify, an antipsychotic, and Depakote, a mood stabilizer; she confirmed that to her knowledge, there were no side effects happening at that time that would interfere with his competency to stand trial. Although she acknowledged that defendant complained of severe side effects involving sexual dysfunction, Dr. Hamilton stated that she and Dr. Cutillar opined they were not actually serious.

Third, the government must prove involuntary medication is necessary to further the important governmental interests. *Ruiz-Gaxiola,* 623 F.3d at 695-697, 701 (citing *Sell* 539 U.S., at 180-181). To prove this factor, the government must prove, by clear and convincing evidence, "that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." *Sell,* at 181.

Here, the Court should hold the government has proved the third factor by clear and convincing evidence. As to whether Mr. Corral could be persuaded to voluntarily

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 22

take Abilify, an antipsychotic, and Depakote, a mood stabilizer, the record shows he persistently held firm to his stand against taking these medications on a voluntary basis. E.g., Dkt. 297 at 21-23 (defendant admits he did not take psychiatric medications since leaving FMC Devens in May 2025; and tells Dr. Hamilton "he was not going to lawfully take medication" and wants to show he is competent without taking the medication). As for alternative therapies, Dr. Hamilton stated that talk therapy, cognitive behavioral treatment, can take months if not years to be successful in restoring a person with psychotic symptoms to competency – because it takes time to build and maintain the patient's trust in the face of their delusions. *Id.* at 120-121. She could not give an opinion about whether talk therapy would work better than antipsychotic medication. *Id.* Thus, unlike the situation in *Ruiz-Gaxiola,* 623 F.3d at 698-703, the government in this case has established the second factor and established the third factor because the record shows less intrusive treatments would not be feasible.

Fourth, the government must prove that the administration of the medication is medically appropriate and in the defendant's best interests as a patient considering his medical condition. *Sell,* 539 U.S. at 181-82. "[I]n analyzing this factor, courts must consider the long-term medical interests of the individual rather than the short-term institutional interests of the justice system." *Ruiz-Gaxiola,* 623 F.3d at 703. The Court is required to evaluate the time required for the proposed treatment to provide the medical benefit to the patient, and the Court must "consider *all* of the medical consequences of the proposed involuntary medication, including those consequences that may not affect the defendant's trial in any way, but result in long term side effects." *Id.* at 704-705.

The Court should hold that the government has not proved the fourth factor by

clear and convincing evidence. The U.S. Supreme Court has "mandated an intermediate standard of proof –'clear and convincing evidence'- when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Cruzan by Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 282 (1990) (quoting, *Santosky v. Kramer,* 455 U.S. 745, 756 (1982)). The clear and convincing evidence standard has been described as evidence that produces "a firm belief or conviction as to the truth of the allegations" in the mind of the factfinder, and evidence "so clear, direct and weighty and convincing" that it allows the finder of fact "to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan,* at 285 n. 11. It has also been described as evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the proponent's] factual contentions are 'highly probable.'" *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984) (citation omitted). The clear and convincing evidence standard is satisfied if "the material [the proponent] offered instantly tilted the evidentiary scales in [its favor] when weighed against the evidence [the opposing party] offered in opposition." *Id.* at 316 (citation omitted).

The "clear and convincing evidence standard" has been defined as the standard of proof that "indicat[es] that the thing to be proved is highly probable or reasonably certain." *United States v. Jordan*, 256 F.3d 922, 930 (9th Cir. 2001), *overruled on other grounds by United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (quoting Black's Law Dictionary 577 (7th ed.1999)). The clear and convincing standard requires "'an abiding conviction that the truth of [the] factual contentions at issue is highly probable.'" *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734587, at *7

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 24

(C.D. Cal. Feb. 20, 2026), *report and recommendation adopted*, No. 5:25-CV-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (quoting *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc); *see also Perez v. Wolf*, 445 F. Supp. 3d 275, 287 (N.D. Cal. 2020) (collecting cases applying the "high standard" of "clear and convincing" evidence).

The Court in *Sell* held that more demanding substantive standards apply to involuntary medication to restore competency to stand trial for a pretrial detainee than the Court in *Harper* required for a due process hearing for the purpose of involuntarily medicating a convicted inmate in response to the inmate's alleged dangerousness. *Loughner,* 672 F.3d at 747.

In *Loughner,* the Ninth Circuit addressed the substantive due process standard that would apply if the government seeks to involuntarily medicate a pretrial detainee based on dangerousness to self or others. *Id.* at 748. In that situation, the Ninth Circuit held that the *Harper* analysis would provide the appropriate due process, and the hearing may be conducted by a hearing officer at the hospital facility where the defendant is being held, rather than by a judge. *Id.* at 748-764. In *Ruiz-Gaxiola,* 623 F.3d at 705, the Ninth Circuit determined that the fourth *Sell* factor is much more wide-ranging than the second factor.

The record shows that medical professionals at FMC Devens have filed a certification that Mr. Corral is dangerous to self or others, and they are requesting a hearing in Massachusetts federal court to determine whether he should be involuntarily civilly committed. Yet this was based on an administrative review process. *See Loughner,* 672 F.3d at 748-764. The government's sole witness on this point, Dr.

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 25

Hamilton, had never seen a *Sell* order and did not testify about long-term consequences of involuntary medication for purposes of restoring Mr. Corral's competency through trial and sentencing. She was not the prescribing physician for the medications; the more credible expert on the options, dosages, and potential for less intrusive medications was Dr. Cutillar, the defendant's treating psychiatrist.

Although Dr. Hamilton stated the side effects would not negatively affect the defendant's competency to stand trial, she did not answer the Court's question about whether side effects would negatively impact his ability to assist his lawyer in conducting his defense. Dkt. 297 at 132-33. Dr. Hamilton testified that Abilify, an antipsychotic, and Depakote, a mood stabilizer, are medications that would be medically appropriate for Mr. Corral even if there were no charges pending. Yet the defendant's treating physician, who was most familiar with the options for and effects of drug therapy because he was the prescribing psychiatrist, was Dr. Cutillar, and his testimony was not presented by the government. Dr. Hamilton's credibility was lessened by the fact that as a psychologist she did not prescribe or administer the antipsychotic medications or mood stabilizing medications in the past for Mr. Corral; and she could not personally prescribe the medications that would potentially be prescribed if a *Sell* order was issued. See Dkt. 272-1 (Dr. Hamilton's resume); Dkt. 297 at 21-24, 29-31, 35-37 (describing Dr. Hamilton's role, and Dr. Cutillar's role, on the competency restoration team).

The clear and convincing evidence standard is rigorous and protects important privacy and autonomy interests. In this case, involuntary administered medication for several weeks of pretrial, trial, and sentencing (or a plea and sentencing) would have a

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 26

significant impact on the defendant's due process rights, as recognized in *Sell*. The Court should hold the government has not produced evidence that would give the Court an abiding conviction that the truth of the facts at issue concerning the medical appropriateness of involuntary administration of antipsychotic and mood regulation medications are highly probable. As in *Ruiz-Gaxiola,* 623 F. 3d at 705, the Court should follow the Ninth Circuit's analysis and hold that the fourth *Sell* factor is much more wide-ranging than the second factor and the fourth factor is not met in this case.

## CONCLUSION

Based on the above analysis and reasoning, the Court should order the defendant to be committed to the custody of the Attorney General for restoration of his mental competency. 18 U.S.C. § 4241(d). The Court should find "there is a substantial probability that within such additional period of time [the defendant] will attain the capacity to permit the proceedings to go forward." *Loughner,* 672 F.3d at  766..

In the alternative, if the Court decides there is *not* a substantial probability that Mr. Corral will attain the capacity to allow this case to go to trial, the Court should consider whether Mr. Corral should be indefinitely committed under Section 4246. *See United States v. Rivera-Morales,* 365 F. Supp.2d 1139, 1141-46 (S.D. Cal. 2005). If the Court chooses this step, it must follow the procedures under Section 4246, and the defendant must receive notice under Sections 4246, 4247, and the defendant must receive notice of the government's proof regarding potential for future dangerousness. *Loughner,* 672 F.3d at 751-752; *Baker,* 807 F.3d at 1323-25 (6th Cir. 1986).

The Court should deny the government's motion for an order under *Sell v. United States.*

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 27

Pursuant to 28 U.S.C. § 636(b)(1), (b)(3) and Fed. R. Crim. P. 59, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* United States District Court for the Eastern District of California Local Rule of Criminal Procedure 430.1(j).

The Magistrate Judge's Findings and Recommendation will be reviewed *de novo. United States v. Rivera-Guerrero,* 377 F.3d 1064 (9th Cir. 2004).

Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Objections are due within 14 days after service of these Findings and Recommendation.

Dated this 10th day of July 2026.

_Theresa L. Fricke_

Theresa L. Fricke
United States Magistrate Judge

FINDINGS AND RECOMMENDATION ON WITH
PROPOSED FINDINGS OF FACT PURSUANT TO
FED. R. CRIM. P. 59 AND 18 U.S.C. 18 U.S.C. §§ 4241,
4247 - 28